Next, in Becker v. Buffalo Public Schools, 153110. Good morning, Your Honors. May it please the Court, I'm Harvey Sanders. I represent Kevin Becker, the Plaintiff Appellant. The Rule 50A motion here should have been denied with respect to the retaliation claim, and the retaliation claim should have gone to the jury for three reasons. First, the motion itself was inadequate. Second, based on the- What was inadequate? It was inadequate because- What was? I didn't- Pardon me? You said something was inadequate. The motion itself. When the city made the motion, this Court has held that the movement must identify the specific element that the defendant claims is not supported by the record. And here, the entirety of the city's motion with respect to the retaliation claim was one sentence. They said there's absolutely no evidence upon which a reasonable jury could conclude that the defendant, Buffalo Public Schools, refused to hire the plaintiff in retaliation for filing a charge of discrimination. That was the entire motion. They didn't point out what elements- As I understand it, the theory of having the party point out exactly what was missing was to give the other side a chance to fix it. Exactly. What else would you have put in that you hadn't already put in? I would have more directly argued the point that the District Court relied on, which is the factual error as to whether or not there was evidence in the record as to when the decision was made. Basically, the District Court's conclusion was that the decision was made on the date of the interview. As of the point in time where the plaintiff had rested on his primary case in chief, the only witnesses who had testified were the plaintiff and witnesses who were not involved in the interview or in the decision. The interviewers had not yet testified. No one had testified. There was a notation on the top of the interview sheet that was in the record. The interview sheet was in the record. The notation sat on the top of the page, no hire. We don't know, at that point in time, who wrote that, when they wrote that, what that notation represented. I understand your argument, and that would go to the merits. You don't have to get into the issue of whether you had some – the adequacy of the motion. But what evidence – you must have taken discovery. Did you have evidence that would have helped you to fill that gap as to somebody wrote on the day of the interview something like no hire? And your argument is, well, we don't even know who made the decision and to what extent the no hire was the impetus for the decision. But you must know that. You must have known it. Well, and that goes to my second argument, which is that – Did you? Did you know? Well – I mean, did you know – Not with certainty. Did you know the answer to that question? The two witnesses who were at the interview, one said that they didn't recall who wrote it, and one said she believed the other one who was at the interview wrote it. No, that's not the important thing. It's not who wrote it, unless they were the decision maker and relied on it. Exactly, and my – Did you know who the decision maker was and who relied on it? The interviewers were merely recommenders. And, in fact, the district court, in its decision, described that notation as a recommendation and not a decision. What we do know is that decisions to not hire – decisions to hire, hiring decisions, are made very close to the beginning of the school year. So, if you look at A306, you can see when decisions were made each year, and typically in the school setting, decisions to hire are made in September. The plaintiff had been interviewed in past years. He had been hired as long-term subs for entire school years before, as temporary teachers before, and those decisions were routinely – those were made in August, September. In fact, he was hired for that year as a sub, as a long-term sub, and taught the bulk of that year. He wasn't hired as a probationary teacher. So that no-hire statement clearly was not a statement that he was ineligible for hire at any point in time in the future. What we do know, and what the plaintiff testified to, was that – It was a recommendation that he not be hired for the job in question. By the people who did the interview, which were not necessarily decision-makers, but the point being that he was, in fact, hired as a sub, and he was, in fact – and hiring decisions are made much later. So, to say that the hiring decision – and why this is important is because the EEOC charge was filed on April 17th, and the interview was on April 4th. The plaintiff testified very clearly that the reason he filed the charge was because he thought the interview didn't go well, and based on the history, and based on who else had been hired in the past, the fact that the city wasn't following the residency requirement, the fact that so many younger people had been hired. Not because he had been told already that he wasn't getting the job for the 2006-2007 year. He filed a complaint with the EEOC because he anticipated that the interview didn't go well and he wouldn't be hired. That he might not get hired, but the decision to not hire him didn't come until four months later. The fact that we survived the summary judgment motion, which has the exact same standard as the Rule 58 standard. This Court has held that the same standards apply to both of those analyses. There was a report and recommendation of the magistrate judge that was adopted. The magistrate judge found that the plaintiff had set forth a prima facie case, that the plaintiff had engaged in protected activity, that the plaintiff was not hired after the date that he engaged in the protected activity, that although a legitimate non-exclamatory reason was articulated, that the plaintiff had offered evidence of pretext, both in the form of the fact that the city had not followed its residency policy, the fact that the city had hired all of the phys ed teachers who were significantly younger. And this may not be relevant, but whatever the magistrate found as to everything that was submitted to the jury, we lost. We lost on the discrimination claim. And I know the city makes that argument in their paper. We lost the discrimination claim. I said it may not be relevant. I'm just pointing out that- And I had planned to address it. So the fact that we lost on the discrimination claim. Had the judge not granted the 50A motion, we would have made an effort to prove up that retaliation claim during cross-examination of the city's witnesses. And the fact that the jury found against us on the discrimination claim doesn't mean that they couldn't have found in our favor on the retaliation claim. Two totally different standards, and the jury was deprived of that opportunity to make that. Because of the same standards, we contend it's the law of the case, and therefore we should have survived the 50A motion. And then finally, the standards for 58 motions themselves are very minimal. This court has held that all you need to articulate in order to survive the 58 motion is, in the employment discrimination context, a prima facie case. All we had to do was meet the prima facie case standard. And obviously, we met the prima facie case standard by virtue of the fact that we had articulated that in the form of the summary judgment motion that we had survived. Which we had to have articulated a prima facie case in order to survive that motion. And the testimony that was in the record at that point in time, the plaintiff's testimony as to the failure to follow residency policy, the identity of the individual that hired instead of him, the fact that he's incredibly- I don't understand what you mean by prima facie case. As I understand it, you have a prima facie case under the McDonnell Douglas standard. The other side has to articulate a non-discriminatory reason. And then the burden is on you to prove that it was, in your context, really a pretext that this performance at this interview was just pretextual. That that wasn't the real reason. And the question is whether you had enough evidence to have a jury resolve that. And what this court has found in the past in the Buccalow cases, which is one of those, is that because where the plaintiff has rested on its case, all of a sudden it's put on its case. The defendant hasn't put on its case yet. The defendant hasn't even articulated a legitimate non-discriminatory reason at that point of the trial. So all we need to prove at that point in time is just a prima facie case. We don't need pretext. We don't need to disprove the- In whose case did the no higher, this quote no higher, memorandum come in? We offered that document because, and the document wasn't evidence, but the document- It came in on your case. You offered the non-discriminatory, the race-neutral explanation. But we didn't offer evidence as to when that decision was made, and that document itself doesn't show when the decision was made. The document merely shows the fact that he had had 13 years, or the equivalent of 13 years worth of service to the district, and had taught at virtually every school within the district. I reserve time, and I see I'm over. Thank you. Unless there's any other questions. Mr. Lee. Good morning, Your Honors. David Lee, Assistant Corporation Counsel for the City of Buccalow. I was a co-counsel for the school district at trial and represent the district on this appeal. What I'd like to do is focus the court on the evidence that actually is in this record, which is the interview score sheet, which is dated April 4th, 2006, and the claim of discrimination filed with the EEOC 13 days later. So if you look at that evidence, Your Honors, we know that the district made its decision to not hire Mr. Becker 13 days before the administrative discrimination charge was actually filed. He's hiring. He's hiring. I'm sorry, Your Honor. Your Honor, he says, well, he just anticipated it because he had a bad interview. But did you introduce any evidence besides that as to who the decision-maker was and what effect that document had? During the defense case, Your Honor? At any time before the judge kicked the case. Your Honor, the only evidence in the record pertaining to the issue before the court actually is on the interview report and on the later discrimination charge. I'd be remiss if I didn't say this because I think I have to. The district did put on evidence in its case in chief, which included the testimony of Aubrey Lloyd and Andrea Norton, who were actually the interviewers who interviewed Mr. Becker. And my recollection of that testimony is that whether it was Ms. Norton or Mr. Lloyd, and I can't recall directly right now because it's not in this record, but is that that no hire notation was made on the day of Mr. Becker's interview. Now, this entire, which makes, if the court were to remand this case for a new trial, I really think this entire thing would be futile. But all I hear Mr. Sanders doing is speculating up here. Who made the decision? When was it made? What did it mean? Those are all things that he should have figured out or put on proof of in his case. He could have called Ms. Norton. He could have subpoenaed Ms. Norton. He could have called Mr. Lloyd, but he didn't. So if you look at the evidence in this case, Your Honors, it's simply that the no hire decision was made before Mr. Becker filed. So who wrote the words no hire? My recollection, Your Honor, is that it was either, it was certainly one of the interviewers. And as I stand here right now, I can't specifically recall whether it was Ms. Norton. Did they have authority to, were they the persons who made the ultimate decision? On that point, Your Honor, I'm sure it came out at. Did that writing represent the decision? I think, Your Honor, I will answer yes to that question. I think you will. I will. I think that was the final decision. I'm sure that question goes to the position of briefing, as I understand it. It is, Your Honor, correct. And what evidence is there that they were the decision makers? It's called a recommendation. Is there evidence that they were the decision makers? If there was, then there's nothing to argue about. They were the decision makers because that's what they testified to at trial. They testified that they were the decision makers. That's my recollection, Your Honor. Admittedly, that was not in the plaintiff's case in chief. But I think what I'm trying to point out, Your Honor, is that. Where did they testify? They testified for us, Your Honor. With respect to the other issues in the case. Well, yes. And during the defense's case, after Judge Arcaro made his ruling on the 50A motion. Of course, the other argument that I. But you are the side. I'm sorry, Your Honor? The side for that testimony. Your Honor, that testimony is not in the record. Because it was testimony that came out after the 50A motion. I simply brought it up because if the court were to demand this case. I think it would absolutely be futile. Based on the testimony that later came out at trial. These hiring decisions, Your Honor, that came out actually after the no hiring decision. When these three or four other people were hired. Came out in September. That was long after the decision to not hire Mr. Becker was made. The only evidence in this record, Your Honor. Of when that decision was made. Is on the interview report. Which absolutely was marked no hire on the day of the interview. So did your adversary argue to the judge at the time that he dismissed the case. At the close of the plaintiff's case. Did the plaintiff argue to the judge that no hire didn't necessarily represent the decision. But perhaps only a recommendation in a nutshell. That the decision wasn't made in response to his subsequent bringing the case to the EEOC. No, Your Honor. Of any claims you didn't use as a kind of a general motion. To identify the flaws that you misproved. It was more of a general motion, Your Honor. I agree with that. But I think Your Honor made a point earlier that's well taken. And that is well what would Mr. Sanders have done in response. Had the motion been more specific. And what I'm trying to convey here. Is that if Mr. Sanders would have addressed that point. Asking those questions. Well who wrote it? When was it wrote? Is it final? Those would have been all answered against him. He would have had to have called Ms. Norton or Mr. Lloyd. And that wouldn't have helped his case. In fact. The judge made it clear. Did he not? Did the judge make it clear that his reason for dismissing at the close of the plaintiff's case. Was the no hire notation prior to the EEOC? Yes, Your Honor. So what I'm asking is at that point. Did the plaintiff say no judge. You're making a mistake. Because there's no demonstration. That no hire notation represented the decision not to hire him.  That argument was not made, Your Honor. He did not make the argument. Correct. Unless the court has any other questions. I will rest on my brief. And urge the court to affirm the district court's order. Which granted the district's 58 motion. Thank you. Mr. Lee's telling you about stuff that happened during the balance of the case. Which is after the ruling on the 58 motion. Which obviously is irrelevant to what was before the court at the time that motion had been made. What about the question I just asked your adversary? When the judge said I'm dismissing this aspect of the case. Because the no hire notation shows the decision had already been made before the EEOC proceeding. Did you say to him no judge. That would be a mistake. That's just. You can't draw the inference that the decision has already been made. It's just a notation. And maybe a recommendation. But not the decision. That was just. We took exception to that. And we reserved our right to appeal on it. I didn't specifically point that out at that particular point in time. Because if you had. You could have argued to the judge that he's drawing an unwarranted inference. And you could have persuaded him. And the trial continued in any event. Right? I certainly could have tried to. In my experience when district courts make a ruling like that. You move on from that. And you take exception if you disagree with it. But you're not going to convince it. Can you explain. You don't tell the judge what the basis of the exception is. You don't tell them an error that they could cure. Well. I don't. I didn't. And I was a trial judge. But I don't know that that precludes me from making that argument here on appeal. And obviously whatever testimony happened after that is irrelevant. Because we were no longer litigating the retaliation claim. And I do think that in the summary judgment motions. Which had been made previously. It was clear what our position was. You can't say from that piece of paper. That that piece of paper shows that the decision not to hire was made. Before the charge was filed. So therefore you can't say that. It's like when a court does something wrong. Arguably wrong on a charge. You can't just say I take exception. You've got to explain to the judge what you claim is wrong with the charge. And the judge can then easily fix it. If the judge thinks there's merit to your exception. Judges don't think that they're infallible. At least some judges don't think they're infallible. And I certainly respect that. The judge made a factual finding here. That the decision had been made before April 17th. And there wasn't any evidence in the record to support that. Because the decision makers hadn't testified. And the piece of paper couldn't speak to that. And so I think we should have had our chance to present the retaliation claim to the jury. Thank you. Thank you very much. We'll reserve the decision. The final matter on today's calendar is MV Leon Cozio. Which is on submission. And we'll reserve the decision on that matter as well. That concludes today's calendar. And I'll ask the clerk to adjourn court. Court stands adjourned.